UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL D. TAYLOR, | ) |
| | ) CASE NO. C12-1069-MJP-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY DISABILITY |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) APPEAL |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Michael D. Taylor proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1961.[1] He completed high school, attended some college

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT AND RECOMMENDATION
PAGE -1

courses, and received training as a machinist.  (AR 24, 173-74.)  Plaintiff previously worked as a machinist, straightening roll operator, production assembler, fabricator assembler, and motor vehicle assembler.  (AR 27, 191-97.)

With a filing month of April 2009, plaintiff filed applications for DIB and SSI, alleging disability beginning March 1, 2006 due to Crohn's disease and depression.  (AR 145-54, 168.) His applications were denied initially and on reconsideration, and he timely requested a hearing.

On January 20, 2011, ALJ Laura Valente held a hearing, taking testimony from plaintiff and a vocational expert (VE).  (AR 1038-1110.)  On February 25, 2011, the ALJ issued a decision finding plaintiff not disabled.  (AR 17-29.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on April 16, 2012 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date.

At step two, it must be determined whether a claimant suffers from a severe impairment.

---

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

The ALJ found plaintiff's degenerative disc disease and sacroilitis, Crohn's disease, and depressive disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff capable of performing light work, with an ability to lift and carry twenty pounds occasionally and ten pounds frequently, to stand/walk for two hours during an eight-hour workday, to sit without restrictions, and with postural activities allowed on an occasional basis except for frequent balancing, reaching, fingering bilaterally, and no climbing ladders/ropes/scaffolds. The ALJ also found plaintiff must avoid concentrated exposure to vibration and hazards, and was restricted to simple routine one-to-two step tasks. With this RFC, and with the assistance of the VE, the ALJ found plaintiff capable of performing his past relevant work as a production assembler as both actually and generally performed.

If a claimant demonstrates an inability to perform past relevant work or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With consideration of the testimony of the VE, the ALJ alternatively found that jobs existed in significant numbers in the national economy that plaintiff could perform, such as call out operator and surveillance system monitor. The ALJ, therefore, concluded plaintiff was not under a disability at any time from the alleged onset date through

the date of the decision.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to properly evaluate his Crohn's disease, with errors in the consideration of a physician's opinion, the credibility and RFC assessments, and the hypothetical to the VE. He also alleges errors at steps four and five of the sequential evaluation. Plaintiff seeks remand for further administrative proceedings. The Commissioner concedes error at step four, but argues that the ALJ's decision is otherwise supported by substantial evidence and should be affirmed based on the step five decision.

## Crohn's Disease

Plaintiff first observes that, while finding his Crohn's disease severe at step two, the ALJ did not account for any non-exertional limitation attendant to that condition, such as provision for bathroom access other than normal breaks at two-hour intervals. *See* Social Security Ruling (SSR) 96-9p (normal work breaks occur at two-hour intervals). He notes the VE's testimony as supporting the conclusion that unscheduled bathroom breaks would require employer accommodation (*see* AR 1105-07), a factor not relevant in the Social Security

REPORT AND RECOMMENDATION
PAGE -4

disability analysis.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account[.]") (adopted as SSR 00-1c).[2]

However, a step two severity finding does not necessarily imply an impairment will be found to result in functional limitations sufficiently significant to affect the ability of a claimant to perform work activities.  *See*, *e.g.*, *Griffeth v. Comm'r of Soc. Sec.*, No. 06-1236, 2007 U.S. App. LEXIS 3153 at *8-10 (6th Cir. Feb. 9, 2007) ("The ALJ's finding that the limitation was more than minimal [at step two]. . . was not inherently inconsistent with his finding that the limitation has 'little effect' on the claimant's ability to perform basic work-related activities."); *Shandley v. Astrue*, C11-0349-JLR, 2011 U.S. Dist. LEXIS 143491 at *6-8 (W.D. Wash. Oct. 5, 2011) (citing other unpublished opinions finding same), *adopted by* 2011 U.S. Dist. LEXIS 136355 (Nov. 28, 2011).

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. § 416.920(c).  "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless clams." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153-54).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that

---

[2] A narrow exception to this rule, not applicable in this case, allows for the relevance of accommodation at step four with respect to past relevant work as actually performed and where the accommodation was actually provided.  Program Operations Manual System (POMS) DI 25005.020(E) ("If a previous employer offered accommodations that allowed the claimant to perform PRW with his or her impairment, and the claimant retains the ability to do the PRW with the accommodations in place, find the claimant able to do PRW even if the accommodations might not be available in other workplaces or if work ceased because the employer removed the accommodations.")

REPORT AND RECOMMENDATION
PAGE -5

has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28).  Further, adjudicators must exercise "[g]reat care . . . in applying the not severe impairment concept[,]" and, if "unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities," should continue the sequential evaluation process beyond step two.   SSR 85-28.

An RFC assessment at step four, on the other hand, considers the most a claimant can do considering his limitations or restrictions.  20 C.F.R. § 416.945(a); SSR 96-8p.  In other words, "the RFC is meant to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from – though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *limited on other grounds as explained by Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631-33 (6th Cir. 2004).   Indeed, the governing regulation recognizes that a claimant's "impairment(s) and any related symptoms . . . *may* cause physical and mental limitations that affect what you can do in a work setting."   20 C.F.R. § 416.945(a) (emphasis added).  At step four, therefore, the ALJ must identify a claimant's functional limitations or restrictions, and assess his work-related abilities on a function-by-function basis.  *See* 20 C.F.R. § 416.945; SSR 96-8p.  The ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining RFC.  § 416.945(e); SSR 96-8p.  Further, a hypothetical posed to a VE must include all of the claimant's functional limitations supported by the record.  *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71 (9th Cir. 1995)).

The ALJ need not have included in the RFC assessment, or the corresponding

REPORT AND RECOMMENDATION
PAGE -6

hypothetical to the VE, properly discounted opinion evidence or claimant testimony. *See Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1197 (9th Cir. 2004). Plaintiff here alleges the ALJ erred in considering an opinion regarding his Crohn's disease from examining physician Dr. Gary Gaffield and in assessing his credibility. However, in neither respect does plaintiff demonstrate error.

A.   Dr. Gary Gaffield

In the portion of a form containing his functional assessment/medical source statement, Dr. Gary Gaffield stated: "The workplace environment would need to be aware of [plaintiff's] Crohn's disease." (AR 688.) Plaintiff avers that Dr. Gaffield thus contemplated work-related limitations attendant to his Crohn's disease and that, although purporting to give "great weight" to Dr. Gaffield's opinions (*see* AR 26), the ALJ did not identify any such limitations and did not give legally sufficient reasons for not including limitations in the RFC or hypothetical to the VE. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (ALJ must provide clear and convincing reasons for rejecting uncontradicted physician's opinions, and specific and legitimate reasons for rejecting contradicted physician's opinions) and *Thomas*, 278 F.3d at 956 (hypothetical must include all limitations supported by record).

As argued by the Commissioner, however, plaintiff fails to demonstrate reversible error in the consideration of his Crohn's disease. Dr. Gaffield had the opportunity to assess limitations associated with plaintiff's Crohn's disease and did not do so. Instead, after he assessed numerous specific limitations associated with plaintiff's other physical conditions – including a two hour limitation on walking or standing and avoidance of ladders, steep stairs, incline plains, and major obstacles based on foot sensitivity and lumbar spasms, lifting

limitations based on lumbar spasms, postural limitations based on restricted motion and weakness in hips and lumbar spasms, and manipulative limitations based on reports regarding plaintiff's hands – Dr. Gaffield stated only that "[t]he workplace environment would need to be aware of his Crohn's disease." (AR 688.) In fact, while Dr. Gaffield specifically mentioned "adequate breaks and rest periods" in association with plaintiff's walking and standing limitation, he declined to address any such factors in relation to plaintiff's Crohn's disease. (*Id.*)

Plaintiff's contention that Dr. Gaffield contemplated a work restriction associated with his Crohn's disease is no more than speculative. While plaintiff may posit a different interpretation of the record, when evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Here, it is apparent the ALJ did not read Dr. Gaffield's report as including a restriction related to plaintiff's Crohn's disease and, as that reading of the record can be deemed rational, the ALJ's interpretation should not be disturbed by this Court.

Plaintiff does not point to any other medical opinion as supporting specific limitations associated with his Crohn's disease and not properly evaluated by the ALJ. He, instead, appears to rely on his own opinion as to the limitations associated with his condition. (*See* Dkt. 30 at 3 ("A claimant such as Taylor with Crohn's disease does not decide when he or she has to go to the bathroom when afflicted by diarrhea. That is the nature of the impairment. The claimant needs ready access to a bathroom and the ability to take unscheduled bathroom breaks. The Court should remand for a determination of Taylor's need for ready access to a bathroom and unscheduled breaks.")) While his suggestion as to the need for bathroom access

REPORT AND RECOMMENDATION
PAGE -8

appears quite reasonable, plaintiff bears the burden of proving an impairment is disabling. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). He fails to provide sufficient support for a functional limitation associated with his Crohn's disease.

B.      Credibility Assessment

In assessing credibility, an ALJ must first determine whether a claimant presents "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Given presentation of such evidence, and absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Id.* *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

REPORT AND RECOMMENDATION
PAGE -9

01       The ALJ in this case found plaintiff's medically determinable impairments could be

02 reasonably expected to cause the alleged symptoms, but that his statements concerning the

03 intensity, persistence, and limiting effects of those symptoms were not credible to the extent

04 inconsistent with the assessed RFC.  Plaintiff targets several reasons proffered by the ALJ in

05 support of her credibility assessment, arguing they did not cure the defect in the decision with

06 respect to his Crohn's disease.  Plaintiff does not, as stated above, establish a defect in the

07 consideration of his Crohn's disease.  Nor does plaintiff otherwise demonstrate reversible

08 error in the consideration of his credibility.

09       Plaintiff first targets the following assessment by the ALJ:

10     Apparent exaggeration by the claimant concerning his symptoms only undercuts any possible belief given to his testimony and allegations.  At the hearing, he

11     reported that he needed to use the bathroom 6 to 8 times a day with each visit requiring 30 minutes.  However, no such allegation is found in the various

12     medical reports and chart notations comprising his medical record.  If the claimant's life were actually as restricted as alleged, it is reasonable to infer that

13     he would have told his medical care providers in the hope that something could be done to alleviate this problem.   He also reported that he had numerous flares

14     of Crohn's disease, even during his incarceration for robbery.  Yet, the notations from his incarceration detail no such event.

15

16 (AR 25.)  Plaintiff contends that, while disputing he had to use the bathroom as frequently as

17 alleged, the ALJ failed to specify how frequently he needed to use the bathroom given his

18 Crohn's disease if less frequently than alleged, but more frequently than every two hours.

19       Plaintiff's argument fails.  The ALJ did not assess any limitation with respect to a need

20 for more frequent breaks or otherwise related to plaintiff's need to use a bathroom.  Again,

21 plaintiff bore the burden of supporting the existence of any such limitation and does not

22 demonstrate error in the ALJ's consideration of the evidence.  Moreover, an ALJ may

REPORT AND RECOMMENDATION
PAGE -10

appropriately consider a claimant's tendency to exaggerate in assessing credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). *See also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.") Here, the ALJ supported his finding as to exaggeration, pointing to an absence of support in the medical record generally and specifically in the incarceration-related records.

Plaintiff next avers the ALJ based his finding on immaterial inconsistencies as to when he ceased his alcohol use. He posits that, because the ALJ did not find any substance use disorder during the relevant time period, she could not reasonably find any intent to mislead based on those immaterial inconsistencies. This argument also fails. The ALJ noted, as one of a number of reasons for her credibility conclusion, inconsistent statements concerning plaintiff's sobriety as "add[ing] support for disbelieving him." (AR 25.) Inconsistent statements regarding alcohol use may be considered as a reason to reject a claimant's testimony. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Plaintiff provides no support for the contention that such consideration may only occur where a substance use disorder is found during the time period under consideration.

Finally, plaintiff takes issue with the following statement: "The fact of his drug-seeking behavior implies superior mental abilities used to manipulate the medical system to achieve his goals, rather than use those abilities to return to work." (AR 25.) Plaintiff describes this reasoning as "unreasonable disparagement" and "pejorative." (Dkt. 28 at 10 and Dkt. 30 at 5.) He contrasts this depiction of him as an "evil genius" (Dkt. 28 at 11) with the ALJ's finding that he was mentally limited to one- and two-step tasks (Dkt. 30 at 5). He also

states that, as a related matter, the ALJ unreasonably found him not credible for seeking too much medical treatment (i.e., relief from pain).

The ALJ employed an ill-fitting turn of phrase in describing plaintiff as possessing "superior mental abilities[.]" (AR 25.) Excluding that particular phrase, however, her reasoning was entirely appropriate. Prior to the statement at issue, the ALJ reasoned:

> Also, the claimant's actions suggest drug-seeking behavior. From December 2009 to October 2010, the claimant went to the emergency room at least 15 times for a variety of reasons including dental caries, low back pain, and sciatica, for which he was prescribed medications like Percocet and vicodin on each occasion. According to chart notations from the Providence Hospital, he was admonished by the emergency room doctor to discontinue his pattern of getting prescription refills for narcotics from the emergency room. While the claimant maintains that his primary care physicians have prescribed Percocet or vicodin for him, the medical record does not support this allegation.

(*Id*.) The ALJ reasonably and properly considered evidence of drug-seeking behavior. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *amended opinion at* 2001 U.S. App. LEXIS 17960 (Aug. 9, 2001) (ALJ properly considered evidence of exaggeration of pain to receive pain medication). *Accord Massey v. Comm'r SSA*, No. 10-35004, 2010 U.S. App. LEXIS 21508 at * 2 (9th Cir. Oct. 19, 2010) (ALJ's interpretation of record that claimant engaged in drug-seeking behavior is a clear and convincing reason for disregarding his testimony). Moreover, rather than criticizing plaintiff for seeking too much treatment, the ALJ went on to find that plaintiff failed to comply with prescribed treatment by stopping or cutting down on several different types of medication. (AR 25.)

Also, even if the Court were to find the statement challenged by plaintiff to constitute error, such error would be harmless. *See*, *e.g.*, *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (error can be deemed harmless where "the ALJ's

decision remains legally valid, despite such error.") The ALJ in this case provided a number of additional reasons in support of her conclusion, all of which, as the above, can be deemed clear and convincing reasons to reject plaintiff's testimony. (AR 24-26.) Those reasons included: (1) that the objective medical evidence did not support the degree of limitation alleged, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") and *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (cited source omitted); (2) that plaintiff's activity level did not support his allegations, *Tonapetyan*, 242 F.3d at 1148 (ALJ appropriately considers inconsistencies or contradictions between a claimant's statements and activities of daily living); (3) a disconnect between allegations about the severity of plaintiff's symptoms and his general physical condition, *see, e.g., Marcia v. Sullivan*, 900 F.2d 172, 177, n.6 (9th Cir. 1990) ("ALJ may rely on his own observations when determining whether a claimant is exaggerating an impairment," so long as those observations are not "used as a substitute for medical diagnosis.") (cited sources omitted); (4) a disconnect between plaintiff's various allegations, *Light*, 119 F.3d at 792 (ALJ may consider inconsistencies in testimony or between testimony and conduct, daily activities, and/or work record); and (5) plaintiff's failure to follow his medical regimen, *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (quoted sources and internal quotation

marks omitted).  (*Id.*)

In sum, plaintiff fails to support his contention of error in the credibility assessment, either as related to his Crohn's disease or overall.  The ALJ's consideration of plaintiff's Crohn's disease should, therefore, be affirmed.

<u>Step Five Decision</u>

As the Commissioner concedes error at step four, the Court need only consider the arguments raised in relation to step five.  At step five, with consideration of the VE's testimony, the ALJ identified two occupations in determining plaintiff could make a successful adjustment to other work:  call out operator (Dictionary of Occupational Title (DOT) 237.367-014) and surveillance system monitor (DOT 379.367-010).   (AR 28.)

The DOT raises a rebuttable presumption as to job classification.  *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995).  Pursuant to SSR 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007).  As stated by the Ninth Circuit Court of Appeals:  "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."  *Johnson*, 60 F.3d at 1435-36 (VE testified specifically about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work).  *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.")

Plaintiff argues substantial evidence does not support the ALJ's decision at step five because both of the identified positions require the ability to perform "reasoning level 3" work, while the ALJ restricted plaintiff to simple routine one-to-two step tasks. *See* DOT 237.367-014 and DOT 379.367-010 (both defined as reasoning level 3 work); (AR 23 (assessing plaintiff as restricted to "simple routine one-to-two step tasks) and AR 1098 (posing hypothetical to VE entailing "simple, repetitive, one to two step tasks."))  Plaintiff contends that the only work consistent with the RFC and corresponding hypothetical is reasoning level 1 work, which requires an individual:  "Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  DOT, App. C.  Reasoning level 3 work, on the other hand, requires that an individual:  "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  *Id*.

The VE in this case, upon the ALJ's inquiry, stated his testimony was consistent with the DOT.  (AR 28, 1100-01.)  Plaintiff avers that, given that neither the ALJ, nor the VE apprehended the inconsistency between the requirements of the identified jobs and the hypothetical reflecting his RFC, the ALJ unreasonably relied on incorrect testimony and the step five decision lacks the support of substantial evidence.

The Commissioner denies the existence of any conflict.  Reasoning development is one aspect of the "General Educational Development (GED) Scale" used in assessing DOT job listings.  DOT, App. C. (the GED also addresses levels of mathematical and language development).  The DOT explains with respect to the GED:  "This is education of a general

nature which does not have a recognized, fairly specific occupational objective." DOT, App. C. The Commissioner argues, therefore, that the GED does not reasonably correlate to RFC.

The Commissioner further points to evidence of plaintiff's education and training. (*See*, *e.g.*, AR 24 (noting claimant's testimony that he was enrolled in college classes in creative reading and history)).) The Commissioner argues that the medical and vocational record in this case persuasively support the ALJ's finding that plaintiff could perform the unskilled jobs identified at step five. *See* DOT 237.367-014 and 379.367-010 (both with a specific vocational preparation (SVP) of 2) and SSR 00-4p ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2[.]"). He notes the Court's ability to "draw[] specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

Both parties point to case law supportive of their positions. However, the Court finds a thorough analysis of that case law unnecessary. As previously discussed by this Court in detail, there is no Ninth Circuit authority addressing the correlation between the DOT reasoning levels and functional limitations identified in an RFC assessment, and district courts, as well as courts outside of this Circuit, are divided on the issue. *Skeens v. Astrue*, No. C12-5070-RAJ, 2012 U.S. Dist. LEXIS 145499 (W.D. Wash. Sep. 12, 2012) (describing case law), *adopted by* 2012 U.S. Dist. LEXIS 145498 (Oct. 9, 2012). In addressing the issue, this Court has on more than one occasion employed an approach requiring a close reading of the ALJ's RFC assessment in order to determine how it compares to reasoning level requirements. *See id. at* *26 (RFC finding that plaintiff could understand "'simple 1 to 2 step instructions'" and "'perform simple tasks[]'" was "analogous to reasoning level 1 only."); *Morgan v. Astrue*, No.

REPORT AND RECOMMENDATION
PAGE -16

11-422-JLR, 2011 U.S. Dist. LEXIS 150675 at *17-22 (W.D. Wash. Nov. 28, 2011), *adopted by* 2011 U.S. Dist. LEXIS 143389 (Dec. 13, 2011) ("Importantly, the ALJ did not limit Ms. Morgan to only one- to two-step tasks. Such a limitation would, the Court believes, more clearly indicate a limitation to reasoning level 1 jobs, which includes jobs with only one- or two-step instructions. Instead, the ALJ found Ms. Morgan had moderate limitations in daily activities, social functioning, and concentration, persistence, and pace. . . . This level of limitation does not conflict with a finding that Ms. Morgan can perform detailed but uninvolved work—work that requires level 2 reasoning."); *Healey v. Astrue*, No. C10-5679-RAJ, 2011 U.S. Dist. LEXIS 71112 at *7-9 (W.D. Wash. May 24, 2011), *adopted by* 2011 U.S. Dist. LEXIS 71115 (July 1, 2011) (finding reasoning level 2 jobs inconsistent with RFC finding plaintiff "unable to perform 'detailed' tasks, as well as restricting her to 'simple and repetitive' tasks.").

The task in this case is far easier than previously presented. That is, the Court's previous consideration of this issue would support a finding of inconsistency between the RFC and reasoning level 2 work, which requires an individual: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT App. C. *See Skeens*, 2012 U.S. Dist. LEXIS 145499 at *26; *Healy*, 2011 U.S. Dist. LEXIS 71112 at *7-9.[3] The VE here

---

[3] As observed by the Commissioner and previously discussed by this Court, courts have reached different conclusions when presented with similar circumstances. *See, e.g.*, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict established where plaintiff limited to "simple" work and only reasoning level 3 jobs identified; considering that the claimant "finished high school, completed training to become a certified nurse's assistant, and has the cognitive capacity to follow simple instructions."); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding failure to inquire as to inconsistency with DOT harmless where hypothetical indicated claimant "cannot be expected to do

REPORT AND RECOMMENDATION
PAGE -17

identified work requiring even greater ability, as encompassed in reasoning level 3.

The Court acknowledges the appeal of the Commissioner's argument that the record could support a finding that plaintiff was capable of a greater reasoning ability. However, it is the role of the ALJ to determine credibility and resolve ambiguities and conflicts in the evidence. *Carmickle*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is responsible for resolving conflicts in the medical record."); *Thomas*, 278 F.3d at 956-57 ("When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict.") (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). The ALJ in this case assessed plaintiff as "restrict[ed] to simple routine one-to-two step tasks." (AR 23.) The Commissioner does not identify, and the Court does not find, anything in the ALJ's decision that would allow the drawing of a specific and legitimate inference that the ALJ concluded plaintiff could perform the requirements of reasoning level 3 work. *See* DOT App. C ("Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.") Instead, the RFC finding is analogous to the definition of reasoning level 1 work. *Id*. ("Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these

---

complex technical work" and the reasoning level 3 jobs identified were classified as unskilled and did "not appear to be 'complex.'"); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (concluding a limitation to "simple and routine work tasks" was inconsistent with a reasoning level 3 job and "more consistent" with a reasoning level 2 job); *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983 (C.D. Cal. 2005) (finding no conflict between RFC limiting claimant to simple tasks performed at a routine or repetitive pace and jobs requiring a reasoning level of 2: "Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'")

REPORT AND RECOMMENDATION
PAGE -18

situations encountered on the job.")

In sum, plaintiff identifies an inconsistency between the RFC/hypothetical to the VE and the jobs identified at step five. Neither the ALJ, nor the VE accounted for any such inconsistency. Accordingly, as argued by plaintiff, the ALJ erred in relying on the VE's testimony and the ALJ's step five decision lacks the support of substantial evidence. *See*, *e.g.*, *Pinto*, 249 F.3d at 847. This matter should be remanded for further consideration of whether plaintiff retains the capacity to make an adjustment to work that exists in significant levels in the national economy.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings. A proposed order accompanies this Report and Recommendation.

DATED this <u>28th</u> day of January, 2013.

Mary Alice Theiler
United States Magistrate Judge